UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION - CLEVELAND

TREVOR CAWLEY

          US District Case No: 1:14-cv-00310-JG
          Judge James Gwin

        Plaintiff,
v.

EASTMAN OUTDOORS, INC., et al.

        Defendants.
_____

### DEFENDANT EASTMAN OUTDOORS, INC.'S
### MOTION TO QUASH THE SUBPOENA TO NON-PARTY PLANTE & MORAN AND FOR A PROTECTIVE ORDER

NOW COMES Defendant, Eastman Outdoors, Inc., by and through its attorneys, Clark Hill, PLC, and hereby moves this Court an Order quashing Plaintiff's subpoena of non-party Plante & Moran and/or enter a protective order pursuant to Federal Rules of Civil Procedure 26(c) and 45 and relies upon the attached Memorandum in Support and the exhibits appended therefore.

WHEREFORE, Defendant, Eastman Outdoors, Inc., respectfully requests this Honorable Court enter an Order quashing Plaintiff's subpoena of non-party Plante & Moran and/or enter a protective order pursuant to FRCP 26(c) precluding and/or limiting discovery from Plante & Moran and for other relief this Court deems appropriate and provide the relief this Court deems appropriate.

Respectfully submitted, this 4th day of September, 2014.

201327924.1 36365/163323

        Respectfully submitted,

        */s/ Barry B. Sutton*
        Anthony Agosta
        Barry B. Sutton
        Stephanie Anderson
        CLARK HILL PLC
        500 Woodward Avenue, Suite 3500
        Detroit, Michigan 48226
        Telephone: (313) 965-8300
        Facsimile: (313) 309-6921
        aagosta@clarkhill.com
        bsutton@clarkhill.com
        sanderson@clarkhill.com

        *Counsel for Defendant*
        *Eastman Outdoors, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION - CLEVELAND

TREVOR CAWLEY

US District Case No: 1:14-cv-00310-JG
Judge James Gwin

      Plaintiff,

v.

EASTMAN OUTDOORS, INC., et al.


      Defendants.
_____

### DEFENDANT EASTMAN OUTDOORS, INC.'S
### MEMORANDUM IN SUPPORT OF MOTION TO QUASH
### THE SUBPOENA TO NON-PARTY
### PLANTE & MORAN AND FOR PROTECTIVE ORDER

### INTRODUCTION

Plaintiff recently served an untimely subpoena to Eastman Outdoors, Inc.'s (hereinafter "Eastman") auditor and accountants, Plante & Moran, after Eastman had previously objected to production of the requested financial records. This subpoena was issued after the deadline for discovery in opposition to summary judgment motion set for August 11, 2014. This subpoena seeks proprietary, financial information from a privately held company. Eastman timely objected to similar requests in discovery on the basis that Plaintiff failed to identify any evidence the purportedly supported a punitive damage claim. Instead of addressing this issue with the Court, Plaintiff's served a subpoena on a non-party for the exact private business and financial records previously requested. These records are not relevant to a products liability case and Eastman Outdoors has filed a motion for summary judgment on the claim of punitive damages. This Court should quash Plaintiff's subpoena and/or enter a protective order concerning any

production of Eastman's federal tax returns and audited financial statements from 2008 through 2013 because they are not relevant to this matter.

Eastman has standing to request that this subpoena be quashed because it involves Eastman's personal right to its financial records that are maintained at Plante & Moran and which contain proprietary information related to their business and could result in irreparable harm if this information is produced. Furthermore, this subpoena will result in undue burden and expense to a non-party. In the alternative, Plaintiff will attempt to argue that these records are relevant to his claim for punitive damages. However, this claim is currently before this Court on Eastman's Motion for Summary Judgment. As such, the subpoena is untimely as it was filed after the discovery deadline related to summary judgment motions. In addition, Eastman's financial records have no relevance as there is no evidence for a claim for punitive damages in this matter. For all the reasons set forth in more detail below, Eastman requests that this Court quash the subpoena served on Plante & Moran and enter a protective order related to these documents.

## STATEMENT OF FACTS

This is a product liability case arising out of use of a Wolverine 6070 arrow. Specifically, Plaintiff claims that he was injured when the arrow he was shooting broke and punctured the back of his non-dominant hand as it was propelled forward. Plaintiff has served Eastman numerous written discovery requests. In response, Eastman provided Plaintiff with its insurance policies that were in effect at the time of the subject incident demonstrating that there was insurance coverage in the amount of $2,000,000.00.

In his complaint, Plaintiff included a claim for punitive damages. In discovery, Eastman sought discovery pertaining to this claim. Plaintiff responded by admitting that he had no

information relating to this claim. Specifically, Eastman requested production of information that supported Plaintiff's alleged claim for punitive damages in its Request for Production of Documents. Plaintiff did not provide any evidence.

> 32. If you are seeking punitive damages in this case, produce all documents that support your claim for punitive damages?
>
> **Answer: In possession of Defendant.**

See **Exhibit A,** *Plaintiff's Response to Eastman's Request for Production of Documents, No. 32*. Defense counsel sent a correspondence to Plaintiff's counsel related to Plaintiff's deficient discovery responses and requested supplementation on June 26, 2014. *See* **Exhibit B**, *Correspondence to Plaintiff's Counsel dated 06/26/14.* Specifically, Eastman advised it was not in possession of any documents that would support a claim for punitive damages and requested that Plaintiff properly respond to this discovery request. *Id.* Plaintiff never supplemented his discovery responses.

Plaintiff served his Third Request for Production of Documents on July 28, 2014 requesting numerous financial records, including records pertaining Eastman's federal tax returns, audited financial balance sheets, cash flow reports, annual gross revenues and net profits, etc., for the years 2010 through 2013. *See* **Exhibit C**, *Plaintiff's Third Request for Production of Documents dated 7/28/14*. Eastman timely served responses objecting to production of the requested documents because they are not reasonably calculated to lead to admissible evidence in this products liability case on August 15, 2014. Plaintiff did not respond or otherwise discuss this objection with defense counsel. Further, Plaintiff had still failed to update his answers to discovery to identify any evidence pertaining to any claim of punitive damages.

The deposition of Eastman's corporate representatives was taken on August 5, 2014. During the deposition of Eastman's corporate representatives, Plaintiff's requested information pertaining to the company that performed Eastman's audited tax returns. The financial auditor was identified as Plante & Moran. By Court order, discovery to oppose a motion for summary judgment closed on August 11, 2014.

On August 18, 2014, in accordance with the time period set forth by the Court, Eastman filed its motion for summary judgment seeking to dismiss Plaintiff's claims. The motion included a portion that sought to dismiss Plaintiff's punitive damage claim. (*See* Doc # 23). The motion explained that Plaintiff had failed to identify any evidence purporting to support a claim for punitive damages, and had otherwise failed to identify any theory of liability in that regard.

Thereafter, without bringing the issue to the attention of defense counsel, and without supplementing the answers to discovery identifying *any* evidence that purported to support any claim of punitive damages, Plaintiff then proceeded to issue a subpoena Plante & Moran for Eastman's proprietary documents after Eastman had objected to the production of this information. This subpoena was issued on August 22, 2014 and requested even more information than Plaintiff requested from Eastman. Specifically, Plaintiff requested production of Eastman's:

- year end federal tax returns from 2008 through 2013;
- year-end audited financial sta[t]ements from 2008 through 2013.

See **Exhibit D**, *Subpoena to Produce Documents to Records Custodian at Plante & Moran.* This request is for information that is not public knowledge as it is Eastman's financial business information.

On August 29, 2014, Plaintiff filed his response in opposition to Eastman's Motion for Summary Judgment. For the first time, Plaintiff claimed that Eastman, a mere distributor of the

201327924.1 36365/163323

arrow product involved in the present case, should be held liable on a claim for punitive damages because it did not have a written quality control plan in place at the time of manufacture of the subject arrow. In filing this response, Plaintiff wholly ignored the quality control in place at the manufacturer level, and the record of actual testing performed by the manufacturer on the batch of arrows involved in the present case. Plaintiff also ignored that actual testimony of Eastman's Quality Control Manager, a mechanical engineer who had testified that Eastman does perform its own testing and examination of the arrows, and relies on the stringent quality control procedures actually in place at the manufacturer level. Instead, Plaintiff misrepresents David Vergara's testimony falsely stating that Eastman only performed visual examinations and completely ignores the other inspections performed by Easton. Specifically, Mr. Vergara testified:

> Q. What were the responsibilities that were in place when you got there -- I know this is not your document -- that were in place -- what did the U.S. Eastman Outdoors office do regarding quality assurance or systems management?
>
> A. For product that was already manufactured and received at the facility here in the U.S., generally it would be visual inspection. And although this doesn't cover the full range of -- of inspection that was done on the arrows, **it was also checking of the flexural strength of the arrow, that would be another word for spine, checking the outer diameter, checking straightness**.
>
> \*   \*   \*
>
> Q. **So the first thing Eastman Outdoors U.S. would do when they received a batch like this exemplar E1 would do a visual inspection**, is that what you said – randomly do a visual inspection? They wouldn't inspect every arrow, correct?
>
> A. Correct. **Yes, right**.
>
> Q. And what are they looking for?
>
> A. From a visual inspection, that would be making sure that the batch code was there, labels were correct, every -- the markings on them were correct, the bar code was correct, components were there

> cosmetically. It was a -- it was a good -- it was a good product. Fletching, nocks.
> **And then as I explained earlier, testing could then go to random checking of, you know, the three parameters that are considered important with the consumer and within our own organization, which would be straightness, flexural strength or spine, outer diameter, weight**.

See **Exhibit E**, *Dep. tr. of D. Vergara, pp. 46-47* (emphasis added). Plaintiff provided no legal support for any theory that a mere distributor can be held liable under the high standard required to demonstrate punitive damages, let alone where actual quality control testing documents pertaining to the batch from which the product had been produced.

Plante & Moran is a full service certified public accounting and business advisory firm and in this instance provides accounting and audit services to Eastman and files tax returns for Eastman. Documentation concerning Eastman's financial information, including its tax returns and audited financial statements are not relevant in a products liability matter and would be disclosing proprietary business records of Eastman and thus should not be discoverable to the Plaintiff. There is no need to impose upon non-party Plante & Moran the undue burden and expense of searching for, gathering and producing all the documents responsive to this irrelevant and overreaching subpoena.

## ARGUMENT

A.  **EASTMAN HAS STANDING TO OBJECT TO PLAINTIFF'S SUBPOENA TO NON-PARTY PLANTE & MORAN BECAUSE THE DOCUMENTS REQUESTED ARE ITS FINANCIAL DOCUMENTS WHICH IT HAS PERSONAL RIGHT TO PROTECT.**

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, **unless the objecting party claims some personal right or privilege with regard to the documents sought**." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure § 2459* (3d ed. 2013); *see also, Crispin v. Christian Audigier, Inc.*, 717 F.

Supp. 2d 965, (C.D. Cal. 2010) (emphasis added); *Dart Indus. Inc. v. Liquid Nitrogen Processing Corp. of Cal.,* 50 F.R.D. 286, 291 (D. Del. 1970); *Davis v. General Accident Ins. Co. of Am.*, 1999 U.S. Dist. LEXIS 5344, *2 (E.D. Pa. Apr. 15, 1999). The Sixth Circuit has observed that a party has standing to seek to quash a subpoena when the party is claiming some personal right or privilege with regard to the documents sought. *Johnson v. Guards Mark Sec.*, 2007 U.S. Dist. LEXIS 97915, *1 (N.D. Ohio Mar. 31, 2007)(quoting *Mann v. Univ. of Cincinnati,* 1997 U.S. App. LEXIS 12482, *4 (6th Cir. May 27, 1997).

      Here, the subpoena seeks documents that include Eastman's private federal tax returns and audited financial statements from 2008 through 2013. In general, audited financial statements include all basic financial statements for a business, which includes a balance sheet of assets, liabilities and ownership equity; income statements with comprehensive income, revenue, expenses and profit and loss reports related to the operation of the business; and statements of cash flow, particularly operating, investing and financing activities. Here, the subpoena to Plante & Moran seeks information regarding Eastman's proprietary documents and it has a "personal right" to move to quash this subpoena directed to a non-party for its financial documents. Therefore, Eastman clearly has demonstrated that it holds a personal right or interest in protecting this information from public disclosure.

**B.**     **P**LAINTIFF **F**AILED TO **T**IMELY **I**SSUE **T**HE **S**UBPOENA TO **P**LAINTIFF **& M**ORAN AND **I**T **S**HOULD **B**E **Q**UASHED.

      Rule 45 clearly provides that subpoenas are "discovery" under Rule 16 and 26, and are subject to the same deadlines as other forms of discovery. *See* Fed. R. Civ. P. 45. The Sixth Circuit has held that an order quashing a subpoena is appropriate where the subpoena is issued to a third party after the discovery cut-off date. *See Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461, 464 (6th Cir. 1995), *cert. denied*, 516 U.S. 1078, 116 S. Ct. 785, 133 L. Ed. 2d 736

(1996) (affirming district court's decision to quash subpoenas of material that could have been produced through normal discovery where plaintiff used subpoena to circumvent discovery deadline); *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 354-55 (6th Cir. 1984). *See also, Integra Lifesciences I, Ltd. v. Merck KGaA,* 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case."); *Rice v. United States,* 164 F.R.D. 556, 558 (N.D. Okla. 1995) ("After careful consideration, the Court finds that the Rule 45 subpoenas duces tecum in this case constitute discovery.").

Plaintiff will attempt to claim that he is requesting Eastman's financial documents related to his unsupported claim for punitive damages. Prior to issuing this subpoena, Eastman had timely filed a Motion for Summary Judgment pertaining to Plaintiff's claim for punitive damages. As such, Plaintiff's subpoena to Plante & Moran is therefore governed by this Court's Track Assignment, which provides that the "deadline for completing discovery needed to support or defend dispositive motions is August 11, 2014". (Doc #: 16). In the present case, Eastman sought discovery into Plaintiff's punitive damage claim and was told that Plaintiff had no evidence to support such a claim. Plaintiff failed to supplement his discovery in any way. Plaintiff had ample time to request these documents prior to this discovery deadline and has not provided a sufficient explanation for its delay in issuing this subpoena, which Eastman contends is improper and irrelevant. Eastman submits that he waived the right to seek these documents by failing to bring them within the time period set forth by the Court.

**C. THE SUBPOENA ISSUED TO NON-PARTY PLANTE & MORAN SHOULD BE QUASHED AND/OR SUBJECT TO PROTECTIVE ORDER BECAUSE THE SCOPE OF PLAINTIFF'S SUBPOENA IS NOT RELEVANT TO ANY CLAIMS OR DEFENSES IN THIS LAWSUIT AND IS UNDULY BURDENSOME ON THE NON-PARTY.**

Further, the subpoena should be quashed because it is not reasonably calculated to lead to admissible evidence. In a claim in which Plaintiff has failed to provide any evidence supporting any claim of punitive damages, Plaintiff's subpoena to non-party Plante & Moran is an obvious attempt to get private, proprietary, and entirely irrelevant documents and records of Eastman – documents that they were not given in response to discovery requests after Eastman objected to production. As demonstrated above, Eastman immediately took the position that the information concerning any financial information is not relevant in a products liability matter.

**1. *General Rules Pertaining to Non-Party Subpoenas and Scope of Discovery*.**

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. ***The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b)***. Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Pursuant to the Federal Rules of Civil Procedure, parties are entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Federal courts, however, are empowered to issue protective orders for "good cause" "to protect any party or person from annoyance, embarrassment, oppression, or undue burden or expense" including: to limit the scope of disclosure or discovery to certain matters, to require that a deposition be sealed and opened only on court order, or to require that "a trade secret or other confidential research, development, or commercial information" not be

revealed or only be revealed only in a specified way. Fed. R. Civ. P. 26(c). Civil protective orders play a very important role in the judicial process.

A court must protect a nonparty subject to a subpoena if a subpoena "requires disclosure of privileged or other protected matter" or the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3). A court must also limit discovery if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C). Moreover, upon motion from a party who certifies that they have conferred in good faith with the opposing party, a court may also "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). The issuing court also may quash a subpoena if it determines that the subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B).

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but **the party issuing the subpoena must demonstrate that the discovery sought is relevant**." *Cedarcrestone Inc. v. Affiliated Computer Servs.,* 2014 U.S. Dist. LEXIS 90479, *7 (M.D. Pa. July 3, 2014); *Transcor Inc. v. Furney Charters Inc.,* 212 F.R.D. 588, 592-293 (D. Kas. 2003).

    **2.**    ***Courts Have Routinely Held that Requesting Financial Documents Unrelated to the Merits of the Case Should Not Be Permitted.***

Financial documentations of a corporate defendant will not be requires to be produced if it is not relevant to the case. In *Zlotnick v. Rudner*, 1976 Del. Dh. LEXIS 151, *3-4; (Del. Ch. Dec. 17, 2976), the Deleware court held that:

> To allow plaintiff the sweeping investigation into all of the business affairs of its competitor on no more than an unsupported assertion that the plaintiff might find useful evidence in the documents would be [4] a

perversion of justice. See also *Richland Wholesale Liquors, Inc. v. Jos. E. Seagram & Sons, Inc.*, 40 F.R.D. 480.

In Richland Wholesale Liquors, Inc. v. Joseph E. Seagram & Sons, Inc., 40 F.R.D. 480 (S.D.S.C. 1966) the court noted as follows:

> There must be *good cause shown* to produce *designated* documents—hence the relation. In Service Liquor Distributors v. Calvert Distillers Corp., 16 F.R.D. 344 (S.D.N.Y. 1954) the court discussed *good cause* considerations which are pertinent here in that aspect, and also, in the aspect of particularity of designation:
>
>> Certain items from those documents may be relevant, but his is no reason for giving the plaintiff a roving commission to get not merely those items but also the details of a business that may have no relevancy to the lawsuit, but which would be delectable nuggets of information for a competitor.
>>
>> To allow a plaintiff the sweeping investigation into all of the business affairs of its competitor on no more than an unsupported assertion that the plaintiff might find useful evidence in the documents would be a perversion of justice….A litigant is entitled to some privacy on matters not directly relevant to the lawsuit.
>
> \* \* \*

In Wiesenberger v. W.E. Hutton & Co., 35 F.R.D. 556 (S.D.N.Y. 1964), the court commented on the discoverability of income tax returns, saying:

> **There is no privilege for income tax returns but the courts have been reluctant to order their production. People are normally opposed to the invasion of their privacy by exposure of the details contained in an income tax return. In the hands of the Government, these returns are confidential….Unless clearly required in the interest of justice, litigants ought not to be required to submit such returns as the price for bringing or defending a lawsuit.** (Emphasis Added).
>
> **Judge Bryan reviewed the cases a few years ago and concluded that income tax returns should be ordered produced 'where a litigant himself tenders an issue as to the amount of his income' (for example, loss of wages from personal injury, loss of income from violation by defendants of the antitrust laws, etc.) and not otherwise.** Kingsley v. Delaware, L. & W. Ry. Co., 20 F.R.D. 156,

> 158 (S.D.N.Y. 1957). There are decisions that even where the income of a litigant is in issue, the returns should not be ordered produced. See, for example, United Motion Theatre Co. v. Ealand, 199 F.2d 371 (6th Cir. 1952), O'Connell v. Olsen & Ugelstadt, 10 F.R.D. 142 (N.D. Ohio 1949). (Emphasis Added).
>
> **Another recent case expresses the opinion that "the production of tax returns should not be ordered unless it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and further, that there is a compelling need therefore because the information contained therein is not otherwise readily obtainable."** Cooper v. Hallgarten & Co., 34 F.R.D. 482 (S.D.N.Y. 1964). See also Garrett v. Faust, 8 F.R.D. 556 (E.D. Pa. 1949). A similar result was reached in United Motion Theatre Co. v. Ealand, 199 F.2d 371 (6th Cir. 1952) (per curiam)  (tax returns stricken from the order to produc). (Emphasis Added).
>
> It does not appear to the court that the relevancy of the tax returns has been clearly established, but, assuming the relevancy of the tax returns, it further appears, at this juncture, that there has been no showing of a compelling need for the tax returns because the information is not readily obtainable otherwise.
>
> In view of the foregoing authorities the court is constrained to deny the motion to produce the "financial statements and records" and the state and federal income tax returns for the years requested.

*Id.* at 481-482.

In *Eastern Auto Distributors, Inc. v. Peugeot Motors of America, Inc.*, 96 F.R.D. 147 (E.D. Va. 1982), the court looked to all jurisdictions holding that the court needed to make a determination as to the appropriateness of a qualified privilege of protecting a parties tax returns could be overcome:

> Several courts have adopted a two-prong test to guide them in their determination of the appropriate circumstances in which the qualified privilege of tax returns is overcome. That is to say, **in order to compel the disclosure of tax returns, the court must be shown that the information sought from the returns <u>bears some relevance</u> to the subject matter of the litigation**; and that the information sought from  the returns is not readily obtainable from other sources. *Eglin Fed. Credit Union v. Cantor Fitzgerald Securities Corp.*, [91 F.R.D. 414 (N.D. Ga. 1981)]; *Tele-Radio Systems v. DeForest*, [92 F.R.D. 371 (D.N.J. 1981)];

> *Smith v. Bader*, [83 F.R.D. 437, 438 (S.D.N.Y. 1979)]; *Maldonado v. St. Croix Discount, Inc.*, [77 F.R.D. 501 (D.V.I. 1978)]; *Biliske v. American Livestock Insurance Co.*, [73 F.R.D. 124 (W.D. Okl. 1977)]; *Federal Savings and Loan Corp. v. Krueger*, [55 F.R.D. 512 (N.D. Ill. 1972)]; *Richland Wholesale Liquors v. Jos. Seagram & Sons*, supra; *Cooper v. Hallgarten & Co.*, [34 F.R.D. 482 (S.D.N.Y. 1964)].

*Id.* at 481-482.

Here, Plaintiff's claim is for products liability and Eastman has provided sufficient evidence of insurance coverage that would cover his alleged injuries and medical expenses. Financial records of Eastman are not relevant. Currently, Eastman has requested that this Court dismiss the claim for punitive damages. As stated above, after Plaintiff failed to produce any evidence to support a claim for punitive damages and the testimony of the corporate representatives of Eastman clearly established no evidence to support a claim for punitive damages, Eastman timely filed its Motion for Summary Judgment, which included a request that the request for punitive damages be dismissed. Plaintiff never produced any discovery pertaining to this claim. Plaintiff responded to Eastman's motion for summary claiming that a distributor should be held liability for punitive damages because it did not have a written quality control plan when the subject arrow was manufactured. He cited no case law to support this claim. Furthermore, Plaintiff's claim misrepresented the evidence and completely ignored the testimony of Eastman's Quality Control Manager. In addition to the Quality Control testing performed by Shin Kwan, Eastman Outdoors also performs sample testing of products it receives. Such testing includes visual examination as well as the testing of the flexural strength (spine) of the arrow, checking the outer diameter, and checking the straightness. Plaintiff has failed to establish any evidence and cannot establish by clear and convincing evidence of misconduct that manifested in flagrant disregard of the safety of persons. Instead, the evidence supports that Eastman, as the distributor, and the manufacturer of the subject arrow had stringent

quality control procedures that were followed and testing and inspection after it was received by the distributor.  Furthermore, the specifications for the subject arrow were met, as established in the produced quality control records for the batch of arrows of which the subject arrow was a part.  The Motion for Summary Judgment is pending.  As such, the financial records being request from Plante & Moran are not relevant.   Not only is the financial information simply not relevant to products liability matters in general, they are not relevant in this matter given the liability issues, insurance coverage and the Plaintiff's injuries/damages.   Since there is no adverse verdict requesting Eastman's financial information, it is premature at this point.

Even if this Court finds that the financial documents of Eastman are relevant to this case, which Eastman denies, the subpoena issued to Plante & Moran is overly broad and this Court should enter a protective limiting any production of financial documents to the financial records for 2013 only and should prohibit production of records going back to 2008.  This is because any claim of punitive damages should apply only to the current worth of the company.  *Craig v. Bridges Bros. Trucking LLC*, 2014 U.S. Dist. LEXIS 105470, * 14 (S.D. Ohio Aug. 1, 2014); *Westbrook v. Charlie Sciara & Son Produce Co.,* 2008 U.S. Dist. LEXIS 24649, *2-3 (W.D. Tenn. Mar. 27, 2008); *Learjet, Inc. v. MPC Prods. Corp.*, 2007 U.S. Dist. LEXIS 58451 *4 (D. Kan. Aug. 8, 2007)

## **CONCLUSION**

For the above reasons, pursuant to Federal Rules of Civil Procedure 26(c) and 45, Defendant Eastman Outdoors, Inc. respectfully requests that this Court enter an Order quashing Plaintiff's subpoena of non-party Plante & Moran and/or enter a protective order pursuant to FRCP 26(c) precluding and/or limiting discovery from Plante & Moran and for other relief this Court deems appropriate and provide the relief this Court deems appropriate.

        Respectfully submitted,

        */s/ Barry B. Sutton*
        Anthony Agosta
        Barry B. Sutton
        Stephanie Anderson
        CLARK HILL PLC
        500 Woodward Avenue, Suite 3500
        Detroit, Michigan  48226
        Telephone: (313) 965-8300
        Facsimile:  (313) 309-6921
        aagosta@clarkhill.com
        bsutton@clarkhill.com
        sanderson@clarkhill.com

        *Counsel for Defendant*
        *Eastman Outdoors, Inc.*

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically on September 4, 2014.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

        /s/Pam Fantazian
        Pam Fantazian