UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-----------------------------------------------------
                                    :

TREVOR CAWLEY,            :

               Plaintiff,     :       CASE NO. 1:14-CV-00310

                                      :

vs.                        :       OPINION & ORDER

                                      :       [Resolving Doc. 23]

EASTMAN OUTDOORS, INC.,   :

ET AL.,              :

                                      :

            Defendants.    :

-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On October 8, 2012, Plaintiff Trevor Cawley was injured by an allegedly defective arrow distributed by Defendant Eastman Outdoors, Inc.  Defendant moves for summary judgment.[1]  In support of the motion, Defendant primarily argues that Plaintiff has not shown that the arrow had any defect that was the proximate cause of Plaintiff's injury.  Defendant further argues that Plaintiff has no facts to support his claim for punitive damages, and that in any case damages should be subject to a statutory cap.  Plaintiff opposes.[2]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## I. Background

### A. Plaintiff's Injury and Recovery

---

[1] Doc. 23.

[2] Doc. 29.

Case No. 1:14-CV-00310
Gwin, J.

On October 8, 2012, Plaintiff Trevor Cawley was injured while practicing archery with a friend in North Ridgeville, Ohio.[3]  Plaintiff was shooting Wolverine 6070 carbon fiber arrows that he had bought in 2010 and fired on a weekly basis for approximately two years.[4]  The arrows had been manufactured by Shin Kwang Corporation, a South Korean company.  Defendant Eastman Outdoors, Inc. distributed the arrows in the United States.[5]  One of the arrows shattered upon release and pierced Plaintiff's left hand and thumb.[6]

Plaintiff Cawley immediately sought medical attention at a nearby emergency room.[7]  Dr. Stephen Evans, a hand and microsurgery specialist, removed the arrow from Plaintiff's hand, along with several large carbon fibers that had splintered from the shaft.[8]  A few days later, Dr. Evans performed a follow-up surgery to remove additional "hundreds of pieces of these splintered carbon fiber arrow fragments" and to repair damage to Plaintiff's ligaments and tendons.[9]

According to Dr. Evans, Plaintiff has since "healed quite well, given the significant nature and location of his injury."[10]  Plaintiff has been able to return to work as a petty officer in the United States Coast Guard, which includes manual work such as tying rope lines.[11]  Nevertheless, Plaintiff has lasting injuries to his hand, including a scar, decreased range of motion, diminished grip strength, and ongoing pain.[12]  In addition, Dr. Evans was unable to remove all of the minuscule carbon fiber

---

[3] Doc. 23-1 at 6–7.
[4] Id.
[5] Id. at 2.
[6] Id. at 6–7.
[7] Doc. 23-7; Doc. 29-11.
[8] Doc. 23-7; Doc. 29-11.
[9] Doc. 29-11.
[10] Id.
[11] Doc. 23-3; Doc. 29-1.
[12] Doc. 23-3; Doc. 29-1; Doc. 29-11.

Case No. 1:14-CV-00310
Gwin, J.

fragments from Plaintiff's hand, and the remaining fragments sometimes extrude through the skin of Plaintiff's hand as they migrate to the surface.[13]  Plaintiff also faces the possibility of future ailments such as arthritis.[14]

### B. Plaintiff's Claims

On December 27, 2013, Plaintiff sued Defendant in Ohio state court for product liability, breach of warranty, strict liability, negligence, and gross negligence.[15]  On February 13, 2014, Defendant removed the case to this Court based on diversity jurisdiction.[16]

Plaintiff claims the arrow shattered because of a manufacturing or design defect.  Plaintiff bought  about a dozen Wolverine 6070 arrows from Wal-Mart in 2010.[17]  All of his arrows came from the same Shin Kwang batch 040708.  As an avid archer, he shot them approximately once a week for the two years leading up to his injury.  Plaintiff's expert examined both the arrow that injured Plaintiff and another arrow that Plaintiff had been using that day that did not shatter.[18] The expert says that he observed no external markings on either arrow that suggested Plaintiff's use had caused the arrow to shatter.

Instead, the expert says that his microscopic analysis of cross-sections of the arrows show defects in the carbon fiber attributable to the manufacturing process that compromised the structural integrity of the arrows.  In addition to this defect, Plaintiff says Defendant was grossly negligent for failing to inspect the arrows itself and instead solely relying on Shin Kwang's quality controls.

---

[13]/Doc. 23-3; Doc. 29-1; Doc. 29-11.
[14]/Doc. 29-11.
[15]/Doc. 1-1.
[16]/Doc. 1.
[17]/See Doc. 29-1; Doc. 23-3.
[18]/See generally Doc. 29-6; Doc. 29-7.

Case No. 1:14-CV-00310
Gwin, J.

Defendant disputes Plaintiff's allegations.  According to Defendant, there was nothing inherently wrong with the arrows, and it was instead Plaintiff's longtime use of the arrows and failure to follow proper safety protocols that led to his injury.  Each arrow had a warning printed on it advising the user to visit www.safearrow.com, a website that gives instructions and warnings for safe use.  Those instructions advise the user to inspect the arrow for any scratches, gouges, dents, cracks, or other similar damage that could compromise the integrity of the arrow, and to not fire it if any are detected.

Defendant's expert analysis suggests that Plaintiff's frequent firing of the arrows over two years damaged them.[19]  Defendant says the injury was Plaintiff's fault because he continued to fire the arrows despite obvious external damage such as dents and scratches.  Furthermore, Defendant says that both it and Shin Kwang had adequate quality control measures in place to prevent against defective arrows being distributed.

Plaintiff admits he saw the instruction to visit the website that was printed on the arrow and says he inspected his arrows before each use.[20]  In fact, although Plaintiff initially purchased about a dozen arrows in 2010, by 2012 he had discarded all but four arrows due to damage.  He says he performed the suggested inspection on the day of his injury before firing the arrows, and saw no damage that would have made them unsafe to shoot.  Nevertheless, Plaintiff claims the warning was inadequate because it did not adequately describe the dangers of using the arrows, including the potential for "explosive failure."

## II.  Legal Standard

---

[19]/*See generally* Doc. 33-1; Doc. 33-2.
[20]/*See* Doc. 29-1; Doc. 23-3.

-4-

Case No. 1:14-CV-00310
Gwin, J.

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21/] The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[22/] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[23/] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[24/] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[25/]

### III. Analysis

There are four issues raised in this motion for summary judgment that will be addressed in succession. The Court first decides whether Plaintiff's common law claims are abrogated by the Ohio Products Liability Act. The Court finds that Plaintiff may not proceed on these claims. The second issue is whether Plaintiff has demonstrated a genuine issue of material fact that will allow his product liability claim to proceed to trial. The Court finds that Plaintiff may proceed only on his manufacturing defect claim. The third issue is whether the jury may decide whether Plaintiff can recover punitive damages. The Court finds that it is premature to preclude the award of punitive damages at this phase. The fourth issue is whether the Court should impose a cap on damages

---

[21/] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[22/] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[23/] *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[24/] *Matsushita*, 575 U.S. at 586.
[25/] *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2006) (quoting *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997)).

Case No. 1:14-CV-00310
Gwin, J.

Plaintiff may recover.  The Court finds that whether Plaintiff's injury is a "permanent and substantial physical deformity" that is exempted from the statutory damages cap is a question for the jury.

### A. Claims Abrogated by OPLA

Before proceeding to the merits of Plaintiff's product liability claim, the Court addresses Plaintiff's claims that must be dismissed because they are preempted by the Ohio Products Liability Act (OPLA).[26]  The OPLA is "intended to abrogate all common law product liability claims or causes of action."[27]  All of Plaintiff's claims in this case sound in product liability as defined in the OPLA, as they seek to recover damages from a manufacturer or supplier for physical injury based on defective design, manufacture, warning, or failure to conform to warranty.[28]  Thus, any common law claims must be dismissed.

Defendant says that Count Four of Plaintiff's complaint claiming common law negligence fails because it is abrogated by the OPLA and therefore unavailable in this product liability action.[29]  Plaintiff agrees.[30]  The Court therefore **GRANTS** Defendant's motion for summary judgment as to this claim.[31]

The OPLA also abrogates Plaintiff's claims for breach of warranty, strict liability, and gross negligence contained in Counts Two, Three, and Five of his complaint.  The parties dispute whether Defendant has moved for summary judgment on these claims.[32]  Although Defendant's motion is

---

[26]/Ohio Rev. Code §§ 2307.71–2307.80.

[27]/Ohio Rev. Code § 2307.71(B).

[28]/*See* Ohio Rev. Code § 2307.71(A)(13).

[29]/Doc. 23-1 at 14 (citing Ohio Rev. Code §§ 2307.71(A)(13), 2307.71(B)).

[30]/Doc. 29 at 12.

[31]/*See, e.g.*, *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F. Supp. 2d 785, 795–96 (N.D. Ohio 2010) (dismissing common law negligence claims as preempted by the OPLA).

[32]/*Compare* Doc. 29 at 12, *with* Doc. 33 at 3–5.

Case No. 1:14-CV-00310
Gwin, J.

unclear on this issue, Defendant did move for summary judgment on Plaintiff's statutory product liability claims.[33/]   The common law claims for breach of warranty, strict liability, and gross negligence are directed at the same underlying conduct and are subject to the same factual defenses. Because they overlap with the product liability claim, the Court would have to address them anyway in order to resolve this motion.

Because the OPLA bars Plaintiff's claims for common law breach of warranty (both express and implied),[34/] strict liability,[35/] and gross negligence,[36/] the Court **GRANTS** summary judgment for Defendant as to these claims.

*B. Product Liability Claim*

Defendant is the supplier of the allegedly defective arrow, not its manufacturer.[37/]  Defendant purchases its arrows from Shin Kwang, a South Korean company, and then distributes them under Defendant's trade name of "Carbon Express."[38/]  Defendant may thus be liable for compensatory damages "as if it were the manufacturer of th[e] product" because it has "marketed th[e] product under its own label or trade name."[39/]

In his complaint, Plaintiff offers four distinct theories of Defendant's liability under the OPLA.  The Court addresses each in turn.

1. Manufacturing Defect

---

[33/]Doc. 23-1 at 11–16.

[34/]*See, e.g., Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 923–24 (N.D. Ohio 2009).

[35/]*See, e.g., Wimbush v. Wyeth*, 619 F.3d 632, 637 (6th Cir. 2010) ("Strict liability for manufacturers and suppliers is codified by the Ohio Products Liability Act . . . .").

[36/]*See, e.g., Jones v. Staübli Motor Sports Div. of Staübli Am. Corp.*, 897 F. Supp. 2d 599, 616 (S.D. Ohio 2012).  Despite not being able to bring a claim for gross negligence, Plaintiff may nevertheless be able to obtain punitive damages under the OPLA.  *See infra* Section III.C.

[37/]Doc. 19 at 2.

[38/]Doc. 29 at 2.

[39/]Ohio Rev. Code § 2307.78(B)(7).

Case No. 1:14-CV-00310
Gwin, J.

Under Ohio law, "[a] product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards."[40]

Plaintiff's expert, Dr. Scott Beckwith, examined both the arrow that shattered and injured Plaintiff,[41] and another arrow from the same batch that Plaintiff had used for about the same amount of time[42]. He observed that the arrows contained a large amount of "void" content—essentially bubbles in the carbon fiber that "impair[] the [arrow's] strength for its intended use."[43]   Based on his observations, he concluded that the arrow that injured Plaintiff shattered because there "was a defect in the [arrow's] manufacturing and/or a defect in the manufacturing process . . . ."[44]

Defendant's experts, Dr. Michelle Vogler and George Saunders, disagree with this assessment. They say there was nothing inherently wrong with the arrow.  Instead, they point to observable damage on the arrows that they attribute to Plaintiff's repeated use, and argue that it was this damage that caused the arrow to shatter.[45]

Accepting all inferences in Plaintiff's favor, there is a general issue of material fact as to whether there was a manufacturing defect in the arrow that injured Plaintiff.  Dr. Beckwith's expert report would allow the jury to decide that the void content of the arrow constitutes a manufacturing

---

[40]Ohio Rev. Code § 2307.74.

[41]Doc. 29-7.

[42]Doc. 29-6.

[43]Doc. 29-4 at 2.

[44]*Id.*

[45]*See generally* Doc. 33-1; Doc. 33-2.

Case No. 1:14-CV-00310
Gwin, J.

defect and this defect caused the arrow to shatter.[46/]  Defendants will certainly be able to counter with their experts' reports and suggest another theory.  But in this battle of experts, it is the jury's job to decide between the conflicting opinions over what caused Plaintiff's injury.

Because there is a genuine issue of material fact as to whether the arrow that injured Plaintiff had a manufacturing defect, Defendant's motion for summary judgment as to this claim is **DENIED**.

## 2. Design Defect

Under Ohio law, "a product is defective in design . . . if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design . . . exceeded the benefits associated with that design . . . ."[47/]  The statute gives several factors that can be used to balance the foreseeable risks against the benefits.  The foreseeable risks may be determined by factors including:

(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control

---

[46/]*See, e.g.*, *Shaw v. Toyotomi Am., Inc.*, 654 N.E.2d 1337, 1340 (Ohio Ct. App. 1995).
[47/]Ohio Rev. Code § 2307.75(A).

-9-

Case No. 1:14-CV-00310
Gwin, J.

of its manufacturer;

(5) The extent to which that design or formulation is more dangerous than a

reasonably prudent consumer would expect when used in an intended or reasonably

foreseeable manner.[48/]

The benefits, meanwhile, may be determined by factors including:

(1) The intended or actual utility of the product, including any performance or safety

advantages associated with that design or formulation;

(2) The technical and economic feasibility, when the product left the control of its

manufacturer, of using an alternative design or formulation;

(3) The nature and magnitude of any foreseeable risks associated with an alternative

design or formulation.[49/]

Plaintiff's expert, Dr. Beckwith, observed flaws in the carbon fiber of the arrows and

concluded that there "was a defect in the [arrow]'s manufacturing and/or a defect in the

manufacturing process . . . ."[50/] He opines that the defects he observed are a result of a manufacturing

process that "does not reflect good quality control" and that Plaintiff's injury was the result of a

"product-manufacturing defect."[51/]

But Dr. Beckwith offers no opinion or evidence as to whether the risks associated with the

arrow as designed outweigh its benefits.  And Plaintiff offers no evidence from any other source that

would allow a jury to find that the foreseeable risks of the arrow's design outweigh its benefits.

---

[48/]Ohio Rev. Code § 2307.75(B).
[49/]Ohio Rev. Code § 2307.75(C).
[50/]Doc. 29-4 at 2.
[51/]Doc. 29-6 at 17.

-10-

Case No. 1:14-CV-00310
Gwin, J.

Thus, it is not evident that there is anything defective about the arrow's design.

Because Plaintiff has failed to present evidence to create a genuine issue of material fact on his claim for design defect, Defendant's motion for summary judgment is **GRANTED**.

3. Inadequate Warning

Under Ohio law,

(1) [A product] is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
>
> (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.[52]

"Courts have restated the above statutory language as requiring three elements 'each of which must be satisfied: (1) a duty to warn against reasonably foreseeable risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach.'"[53]  "A product is not defective due to lack of warning or instruction or inadequate warning or instruction . . . about an open and obvious risk or

---

[52]/Ohio Rev. Code § 2307.76(A).

[53]/*Monroe v. Novartis Pharm. Corp.*, No. 1:12-CV-00746, 2014 WL 3378345, at *8 (S.D. Ohio July 10, 2014) (quoting *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514 (6th Cir. 2003)).

Case No. 1:14-CV-00310
Gwin, J.

a risk that is a matter of common knowledge."[54]

Although there is not an extensive written warning on the arrow itself, the instruction printed on the arrow to visit the www.safearrow.com website may satisfy Defendant's duty to warn. Warnings contained in an instruction manual can satisfy the duty to warn.[55]  The Court sees no material difference between the warnings that could have been contained in a written manual and the instruction, printed on the arrow, directing the user to the website.

As for the website itself, Plaintiff claims that the warning was inadequate because the video at www.safearrow.com does not specify that a carbon fiber arrow can explosively fail even if it passes the recommended inspections.[56]  Plaintiff admits, however, that he saw the instructions on the arrow, visited the website, watched the video, and followed the instructions to check his arrow for damage prior to shooting.[57]

Plaintiff has provided no evidence that the allegedly inadequate warning was the proximate cause of his injury.  He has not alleged that he would have changed the way he used the arrows had the warning he requests been given.[58]  Furthermore, "[t]here is no duty to warn of a danger of which the user is aware."[59]  The www.safearrow.com website specifically says that "[f]iring a damaged arrow can result in misfiring, fracturing, or splintering in a manner that could result in serious injury or death to the user or anyone in close proximity."  Although it does not specifically say that this type of failure could occur absent damage to the arrow, Plaintiff had notice that the type of injury he

---

[54]/Ohio Rev. Code § 2307.76(B).

[55]/*E.g.*, *Freas v. Prater Constr. Corp.*, 573 N.E.2d 27, 30–31 (Ohio 1991).

[56]/Doc. 29 at 12–13.

[57]/Doc. 23-3 at 14, Doc. 29-1.

[58]/*See Freas*, 573 N.E.2d at 31.

[59]/*Roberts v. Performance Site Mgmt., Inc.*, No. 03AP-784, 2004 WL 1196140, at *6 (Ohio Ct. App. June 1, 2004).

Case No. 1:14-CV-00310
Gwin, J.

suffered could happen.

Because Plaintiff has not shown a genuine issue of material fact, Defendant's motion for summary judgment as to this claim is **GRANTED**.

### 4. Failure to Conform to Representations

Under Ohio law, a product is defective if it "did not conform, when it left the control of the supplier . . . to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm . . . even though the supplier did not act fraudulently, recklessly, or negligently in making the representation."[60] A "representation" is an "express representation of a material fact concerning the character, quality, or safety of a product."[61]  A general warranty is not an express representation.[62]

Here, Plaintiff offers no evidence of any representation made by Defendant.  At best, Plaintiff's claim for breach of warranty alleges that Defendant expressly and impliedly warranted that the arrows were "safe for ordinary and foreseeable use."[63]  This type of general warranty is not a representation under the statutory definition.  Thus, even if taken as true, this allegation would not create a genuine issue of material fact on his claim for failure to conform to representation. Defendant's motion for summary judgment as to this claim is therefore **GRANTED**.

### C. Punitive Damages

In his product liability claim, Plaintiff seeks both compensatory and punitive damages for his

---

[60]/Ohio Rev. Code § 2307.78(A)(2); *see also* Ohio Rev. Code § 2307.77 (same rule for manufacturer).

[61]/Ohio Rev. Code § 2307.71(A)(14).

[62]/*See Saraney v. TAP Pharm. Prods., Inc.*, No. 1:04-CV-02026, 2007 WL 148845, at *8 (N.D. Ohio Jan. 16, 2007).

[63]/Doc. 18 at 6.

Case No. 1:14-CV-00310
Gwin, J.

injury.[64]  Under the OPLA, punitive damages may only be awarded if Plaintiff "establishes, by clear and convincing evidence, that harm for which [he] is entitled to recover compensatory damages . . . was the result of misconduct of the [Defendant] that manifested a flagrant disregard of the safety of persons who might be harmed by the product in question."[65]

Plaintiff's theory in support of punitive damages is that Defendant did not have adequate procedures in place to inspect imported arrows for manufacturing defects before distributing them for sale, or at least had not implemented such procedures when batch 040708 was imported.[66] Defendant disputes the factual basis for Plaintiff's argument.  Defendant says its employees visited Shin Kwang to observe their quality control procedures, found them to be adequate, and have substantially relied on them to guard against defective arrows being shipped.[67]  Defendant further asserts that it conducted additional inspections of some of the arrows that it imported.[68]  Finally, Defendant suggests that there was no reason for it to believe the arrows were being defectively manufactured, as it has only been subject to three claims of defective arrows in the past ten years.[69]

Whether punitive damages should be awarded is a question for the jury, though if the jury awards punitive damages, the amount would be determined by the Court.[70]  There is a genuine issue of material fact as to Defendant's liability for the alleged manufacturing defect that the jury must

---

[64]Plaintiff also asked for punitive damages under his claim for gross negligence.  Doc. 18 at 8.  This claim, however, is barred by the OPLA and therefore dismissed.  *See supra* Section III.A.

[65]Ohio Rev. Code § 2307.80(A).

[66]*See* Doc. 29 at 13–14.

[67]Doc. 33-4 at 2–3.

[68]*Id.*

[69]Doc. 23-1 at 16 n.4.

[70]Ohio Rev. Code § 2307.80(B).

-14-

Case No. 1:14-CV-00310
Gwin, J.

resolve before punitive damages could be awarded.[71]  Furthermore, taking all inferences in favor of

Plaintiff, it is possible that Defendant was aware of potential problems with its arrows given the past

claims against it and yet did not implement adequate inspection procedures until 2009.  Because

these issues exist, Defendant's motion for summary judgment as to punitive damages is **DENIED**.

### D. Statutory Damages Cap

Finally, Defendant requests that the Court cap the potential damages that Plaintiff can

recover.[72]  Ohio law provides a damage cap for non-economic damages in tort actions to recover

damages for personal injury.[73]  This cap does not apply, though, if Plaintiff has suffered a

"[p]ermanent and substantial physical deformity."[74]  "[S]carring may be so severe as to qualify as

a serious disfigurement."[75]

Plaintiff argues that a jury could find that the scar on his left hand and thumb, as well as other

external and internal deformities left as the result of the injury and subsequent surgeries, qualify him

for the exception.[76]  Although Plaintiff and Defendant disagree about the severity of Plaintiff's scar,

that is a question for the jury.[77]  The Court would only reduce the award to the statutory damages cap

if the jury finds that Plaintiff's scar does not qualify for the exception.[78]  The Court therefore

**DENIES** Defendant's motion to impose a damages cap at this stage.

---

[71]/*See Piskura v. TASER Int'l, Inc.*, No. 1:10-CV-248, 2013 WL 1329704, at *9–10 (S.D. Ohio Mar. 29, 2013); *Hertzfeld v. Hayward Pool Prods., Inc.*, No. L-07-1168, 2007 WL 4563446, at *10 (Ohio Ct. App. Dec. 31, 2007) ("[T]he question of whether the issue of punitive damages reaches a jury is not properly disposed of where a genuine issue of material fact exists at the summary judgment stage.").

[72]/Doc. 23-1 at 17–18.

[73]/*See* Ohio Rev. Code § 2315.18(B).

[74]/Ohio Rev. Code § 2315.18(B)(3)(a).

[75]/*Bransteter v. Moore*, No. 3:09-CV-2, 2009 WL 152317, at *2 (N.D. Ohio Jan. 21, 2009).

[76]/Doc. 29 at 14–16.

[77]/*See, e.g.*, *Bransteter*, 2009 WL 152317 at *2.

[78]/*Ohle v. DJO Inc.*, No. 1:09-CV-02794, 2012 WL 4505846, at *2 (N.D. Ohio Sept. 28, 2012).

Case No. 1:14-CV-00310
Gwin, J.

### V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's claims for breach of warranty, strict liability, negligence, and gross negligence in Counts Two through Five of his complaint.  The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion as to Plaintiff's claim for product liability in Count One of his complaint. Plaintiff may proceed on his claim of manufacturing defect, but not on his claims of design defect, inadequate warning, or failure to conform to representations.  The Court **DENIES** Defendant's motion to dismiss Plaintiff's claim for punitive damages.  Finally, the Court **DENIES** Defendant's motion to impose a statutory damages cap.

IT IS SO ORDERED.


Dated: October 17, 2014                                     s/         *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE

-16-